**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| v. | CRIMINAL ACTION |
| TERRELL HAMPTON, | NO. 15-302-2 |
| *Defendant.* | |

**PAPPERT, J.**                                                      **May 15, 2018**

## MEMORANDUM

On September 20, 2016, the grand jury returned a Second Superseding Indictment charging Terrell Hampton, along with his father Kenneth Hampton and Kenneth's fiancée Roxanne Mason, of participating in a scheme to fraudulently obtain apparent title to vacant properties, and to profit from the thefts by occupying, selling and mortgaging those properties. (ECF No. 124.) Count One charged the Defendants with conspiracy to commit wire fraud. Counts Two through Eighteen charged them with wire fraud based on various communications between Kenneth and his co-conspirators, along with his brother Ellis Hampton,[1] including several recorded telephone calls made by Kenneth while he was in federal prison. Counts Nineteen and Twenty charged the Defendants with aggravated identity theft.

On May 18, 2017, Mason pled guilty to Counts 1, 2 through 10, 12 through 14, 16, and 18 through 20. (ECF No. 248.) She was sentenced on October 6. (ECF Nos. 312, 313.) Kenneth went to trial on June 6. (ECF No. 275.) Terrell was scheduled to

---

[1]      Ellis Hampton was originally charged as a co-conspirator. (*See* ECF No. 1.) However, Ellis died on July 16, 2016 and the grand jury subsequently returned the Second Superseding Indictment omitting Ellis. (ECF No. 124.)

be tried along with his father but was injured in a car accident shortly before trial began and was accordingly severed from Kenneth's trial. (ECF No. 270.) Kenneth was found guilty of all charges against him on June 14 and was sentenced on November 22. (ECF Nos. 284, 286, 330, 331.)

Terrell's trial began January 9, 2018. (ECF No. 353.) On January 19, the jury convicted him on Counts 1 – 16, 19 and 20 and found him not guilty on Counts 17 and 18.[2] (ECF Nos. 361, 363.) He filed a timely motion for acquittal, or in the alternative for a new trial,[3] arguing that the evidence presented to the jury was insufficient to sustain the verdict. (Def.'s Mot. at 1, ECF No. 375.) He argues (1) there was a reasonable explanation for his conduct, (2) he was not a willing and voluntary member of the conspiracy, (3) a lack of physical evidence found at his house supports his innocence, and (4) he acted in a manner inconsistent with guilt. (Mot. at 2.) Terrell points to any evidence from the trial that could possibly support these contentions, which repeat his primary trial theory that he was merely pursuing, albeit unsuccessfully, a legitimate real estate business. The Court denies the Motion because the evidence of Terrell's guilt was more than sufficient to sustain his conviction and there is no danger, serious or otherwise, that the jury's well-supported verdict amounted to a miscarriage of justice.

---

[2]     Counts 17 and 18 charged wire fraud in connection with an attempt by Mason and Kenneth to obtain emergency relief funds from FEMA following hurricane Irene. (*See* ECF No. 124; Gov't Exs. 723, 724c.)

[3]     At one point in Terrell's Motion, the Rule 33 argument appears limited to Count Eight. (Def.'s Mot. at 7, ECF No. 375.) However, the Government addresses his Motion with respect to all Counts, as does the Court.

# I

## A

Rule 29 of the Federal Rules of Criminal Procedure provides that the court, "on the defendant's motion[,] must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). In considering the motion, the court must "'review the record in the light most favorable to the prosecution to determine whether any rational trier of fact could have found proof of guilt beyond a reasonable doubt based on the available evidence.'" *United States v. Smith*, 294 F.3d 473, 476 (3d Cir. 2002) (quoting *United States v. Wolfe*, 245 F.3d 257, 261 (3d Cir. 2001)). The court must "presume that the jury properly evaluated credibility of the witnesses, found the facts, and drew reasonable inferences." *United States v. Iafelice*, 978 F.2d 92, 94 (3d Cir. 1992) (citing *United States v. Coleman*, 811 F.2d 804, 807 (3d Cir. 1987)); *see also United States v. Norris*, 753 F. Supp. 2d 492, 501 (E.D. Pa. 2010) ("The court may not 'usurp the role of the jury' by weighing the evidence or assessing the credibility of witnesses." (quoting *United States v. Brodie*, 403 F.3d 123, 133 (3d Cir. 2005))). The burden on the defendant is "extremely high" when challenging the sufficiency of the evidence, *Norris*, 753 F. Supp. 2d at 501 (quoting *United States v. Iglesias*, 535 F.3d 150, 155 (3d Cir. 2008)), and the jury verdict must be sustained "as long as it does not 'fall below the threshold of bare rationality,'" *United States v. Caraballo-Rodriguez*, 726 F.3d 418, 431 (3d Cir. 2013) (quoting *Coleman v. Johnson*, 566 U.S. 650, 656 (2012)). *See also Brodie*, 403 F.3d at 134 ("A finding of insufficiency should be 'confined to cases where the prosecution's failure is clear.'" (quoting *Smith*, 294 F.3d at 477)).

B

A more deferential standard of review applies to motions under Rule 33, which permits the Court to grant a motion for a new trial "if the interest of justice so requires." Fed. R. Crim. P. 33(a); *see also United States v. Johnson*, 302 F.3d 139, 150 (3d Cir. 2002) ("Unlike an insufficiency of the evidence claim, when a district court evaluates a Rule 33 motion it does not view the evidence favorably to the Government, but instead exercises its own judgment in assessing the Government's case."). Courts may grant a new trial if "the verdict is against the weight of the evidence[,]" *United States v. Fattah*, 223 F. Supp. 3d 336, 342 (E.D. Pa. 2016) (citing *Johnson*, 302 F.3d at 150), and "must consider whether there is 'a serious danger that a miscarriage of justice has occurred[,]'" *id.* (quoting *United States v. Silveus*, 542 F.3d 993, 1004–05 (3d Cir. 2008)). Rule 33 motions are not favored and should be "granted sparingly and only in exceptional cases." *United States v. Salahuddin*, 765 F.3d 329, 346 (3d Cir. 2014) (internal quotation and citation omitted); *see also United States v. Ponton*, 337 F. App'x 179, 181 (3d Cir. 2009) (providing that granting Rule 33 motions is "proper only when . . . the jury's verdict resulted in a miscarriage of justice or where the verdict, on the record, cries out to be overturned or shocks our conscience").

C

A defendant is guilty of conspiracy under Section 371 if he or she agrees with another "to commit any offense against the United States, or to defraud the United States, or any agency thereof" and one or more conspirators takes an act in furtherance of the conspiracy. 18 U.S.C. § 371. Accordingly, to convict a defendant of conspiracy, the jury must find beyond a reasonable doubt "'a unity of purpose between the alleged

conspirators, [] intent to achieve a common goal, and an agreement to work together toward that goal.'" *Smith*, 294 F.3d at 477 (quoting *United States v. Gibbs*, 190 F.3d 188, 197 (3d Cir. 1999)).

The elements of conspiracy "can be proven entirely by circumstantial evidence." *Brodie*, 403 F.3d at 134 (citing *United States v. Kapp*, 781 F.2d 1008, 1010 (3d Cir. 1986)). In fact, "'it is not unusual that the government will not have direct evidence'" as "'[k]nowledge is often proven by circumstances.'" *Caraballo-Rodriguez*, 726 F.3d at 431 (quoting *Iafelice*, 978 F.2d at 98); *see also Brodie*, 403 F.3d at 134 ("Indeed, the very nature of the crime of conspiracy is such that it often may be established only by indirect and circumstantial evidence.").

Further, "a conspirator does not have to be aware of all aspects or details of the conspiracy[,]" *Fattah*, 223 F. Supp. 3d at 352 (citing *United States v. Bailey*, 840 F.3d 99, 108 (3d Cir. 2016)), and can be found guilty of an offense committed by a co-conspirator if the offense was "reasonably foreseeable" or reasonably anticipated by the defendant and furthered the objectives of the conspiracy, *United States v. Ramos*, 147 F.3d 281, 286 (3d Cir. 1998) ("A defendant convicted of conspiracy is liable for the reasonably foreseeable acts of his coconspirators committed in furtherance of the conspiracy." (citing *Pinkerton v. United States*, 328 U.S. 640 (1946))).

## II

## A

The record evidence clearly established that Terrell served as his father's principal co-conspirator in carrying out the scheme to illegally obtain and profit from properties to which they had no legal claim of ownership. (*See* Gov't Exs. 904, 1044.)

Kenneth, Terrell and Mason, along with other co-conspirators including Ellis, carried out their scheme by scouting out vacant properties, filing false, fraudulent or forged deeds to obtain apparent title to these properties, and then exploiting the properties for their benefit. At various points over the course of the conspiracy, they alternately occupied the properties, sold them to unwitting third parties for profit, and attempted to or contemplated obtaining loans on the properties. Further, the fraudulent deeds transferring title to the properties purported to be between family members to avoid the applicable real estate transfer tax. The evidence showed that Kenneth, who was incarcerated, was the leader of the conspiracy and heavily relied on Terrell and Mason to carry out the conspiracy's objectives. (*See* Gov't Ex. 1001.)

Terrell argues that the evidence failed to show that he participated in the conspiracy because he "avoided" communicating with his father. (Mot. at 5.) The jurors saw and heard voluminous evidence of Kenneth providing repeated and specific instructions to Terrell by phone, mail and email. The record was replete with direct communications between Terrell and Kenneth, (Gov't Exs. 1004, 1021, 1029, 1044, 1046, 1049, 1068, 1074, 1075, 1077, 1078, 1080, 1082, 1083, 1085, 1089) and of messages they passed to each other through Mason (Gov't Exs. 1003, 1017, 1022, 1042, 1053, 1054, 1058). Further, the evidence showed that Terrell embraced his role and exercised authority within the conspiracy. He considered himself responsible for preparing the fraudulent documents (Gov't Ex. 1043) and recordings between Mason and Kenneth recount Terrell's participation in the production and filing of forged title documents (Gov't Exs. 1016, 1017).

B

The Government presented evidence that the scheme covered a number of properties, several of which were identified by address or neighborhood. Four properties were actually "obtained" by means of fraudulent deeds—763 N. 43rd Street (the "West Philly house"), 32 S. 58th Street, 5357 Delancey Street and 6028 Locust Street—and the conspirators discussed and attempted to "obtain" at least four additional houses—342 North Robinson, 4649 Walnut Street, 1935 South 6th ("South Philly house") and 124 S. 57th Street. Additionally, the Government presented evidence that the property located at 2519 North 18th Street (the "North Philly house") was obtained through a partially forged deed and was part of the scheme to evade property taxes.

For example, on July 8, 2010, Mason filed a deed and tax transfer certificate with the Philadelphia Department of Records claiming that GR and ER, the homeowners, transferred the Delancey Street house to her, as their purported granddaughter. (Gov't Ex. 703). At the time the deed was supposedly signed, both GR and ER had been dead for approximately 20 years. (Gov't Exs. 707, 708.) Further, Mason was not related to either decedent, but claimed an inter-familial transfer to avoid paying real estate transfer tax. The evidence established a similar pattern of conduct by the Defendants with respect to other properties. (*See* Gov't Exs. 20, 21, 22, 601, 604, 606, 615 pertaining to the 58th Street house; Gov't Exs. 801, 802, 804, 807, 808, 809 pertaining to the Locust Street house.)

Although title was in Mason's name, the evidence showed that Terrell was involved in the acquisition and disposition of the Delancey Street House. Recordings

between Mason and Kenneth reveal that Terrell prepared the phony deed and fraudulent tax transfer certificate for Delancey Street. (Gov't Exs. 1016, 1017.) Later, Kenneth instructed Terrell to find someone to buy the Delancey Street house (Gov't Ex. 1091), leading Terrell to attempt to sell the house to Special Agent Percy White who was working undercover as an interested purchaser (Gov't Ex. 728, 728a).

C

Although the evidence recounted above could alone sustain Terrell's convictions, he attempts to provide lawful and "reasonable explanations," all of which are belied by the record, for his conduct with respect to several other homes. Terrell contends that no juror could conclude that he illegally obtained the West Philly house because the evidence did not demonstrate who lawfully owned the house when he acquired it. He suggests the possibility that he could have legally purchased or came into possession of the property through various individuals who lived in or exerted control over it.

On April 14, 2010, Terrell personally appeared at the Philadelphia Recorder's Office and filed a deed purporting to transfer the West Philly house from Queen Wilson and Queen Ester Horne, as grandparents, to himself as their grandson. (Gov't Exs. 407, 408, 409, 410.) Queen Wilson and Queen Ester Horne, however, were mother and daughter, were in no way related to Terrell and both had, for good measure, died long before the alleged transfer. (Gov't Exs. 412, 413.) Further undermining Terrell's argument is the fact that according to the Real Estate Transfer Certificate, the property was "purchased" by Terrell for $1.00 although it had a fair market value of more than $17,000. (Gov't Ex. 407.) Thus, regardless of who had legal title at the time or could have attempted to sell the property, the evidence was more than sufficient to show that

Terrell was not a good faith purchaser. The deed does not purport to transfer title from any living person to Terrell nor does Terrell purport to pay a fair market price for the property.

Terrell contends that he legitimately purchased the North Philly house from Doren Brown for $500. However, the evidence at trial showed that the house was obtained with a partially forged deed and contained false information allowing Terrell to avoid transfer tax, consistent with the scheme. The deed purported to transfer title to the house from Doren and Barbara Brown, as co-owners and grandparents, to Terrell, as their grandson, for $1.00. (Gov't Ex. 301, 302.) Doren testified that Terrell was present when he prepared the deed in which Barbara's name was forged and that Terrell was not related to them.

Terrell makes similar arguments with respect to the South Philly house and an additional property, the Hazel Street house, contending that he intended to lawfully obtain both properties. (Mot. at 4 – 5.) Although Terrell told his father he bought the South Philly house, the evidence showed that the house was never sold to him by the rightful owners and that he had never been to the house, did not have a key and was afraid of going to the house and being identified as a trespasser. (Gov't Ex. 1046.) Further, with respect to the Hazel Street house, Terrell and Kenneth discussed using a straw purchaser to acquire the property and that Terrell did not have money to buy the property. (Gov't Ex. 1068.)

Finally, Terrell argues that the evidence showed he could not have been involved in forging the deed to 124 S. 57th Street because he was imprisoned when the deed was purportedly signed. (Mot. at 4.) First, Terrell chose not to introduce evidence of his

imprisonment at the time the deed was purportedly signed, therefore it was obviously not considered by the jury. What the jury did see was evidence showing that the 124 S. 57th Street house was an object of the conspiracy and that Terrell was fully aware of that fact. (Gov't Exs. 503, 1004.)

D

Terrell's remaining arguments are similarly unavailing. He claims that the only physical evidence tying him to the scheme are blank deeds recovered from his home. (Mot. at 5.) First, the record is replete with evidence, both direct and circumstantial, including recorded phone conversations and records of Terrell personally recording a fraudulent deed, showing his knowing participation in the scheme. In any event, the blank deeds were from the same store and bore the same form number as the forged deeds for the West Philly house, the Delancey Street house, and the Locust Street house. (Gov't Exs. 407, 703, 804.)

Terrell points to a business plan drafted by his father for HROC, Inc. (Gov't Ex. 904) to show that their endeavors were legitimate. (Mot. at 6.) The overwhelming amount of evidence demonstrating the scheme's illegal conduct and purpose would not have allowed any rational juror to conclude that anything Terrell was involved in was legitimate. As the evidence repeatedly showed, the members of the conspiracy, Terrell among them, knowingly forged deeds in order to unlawfully obtain title to target properties.

Finally, Terrell contends that his willingness to have his photo taken when he recorded the West Philly house deed at the Philadelphia Recorder's Office is indicative of innocence. (Mot. at 6.) When viewed in context of the evidence, showing that Terrell

prepared false documents, took apparent title to stolen homes and attempted to extract money from the stolen properties, his willingness to have his photo taken at the Recorder's Officer is more accurately characterized as dumb, not exculpatory.

The evidence presented at trial was sufficient to show that Terrell knew of the conspiracy's criminal objectives and joined the conspiracy for the purpose of committing fraud. While he argues that his actions could also be consistent with a legal and valid real estate business, the applicable legal standard is not whether there is a remote chance that the evidence can be innocently explained. *See United States v. Iafelice*, 978 F.2d 92, 97 (3d Cir. 1992) ("[T]here is no requirement . . . that the inference drawn by the jury be the only inference possible or that the government's evidence foreclose every possible innocent explanation." citing *United States v. Sandini*, 888 F.2d 300, 311 (3d Cir.1989)). A fair interpretation of the Government's evidence—not merely one in favor of the Government—shows that Terrell was a willing participant in the criminal enterprise and that the jury, under any standard, got it right.

An appropriate Order follows.

BY THE COURT:


*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.
