# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION |
| v. | NO. 15-302-2 |
| TERRELL HAMPTON | |

**PAPPERT, J.**                                                    **May 25, 2022**

## MEMORANDUM

A jury convicted Terrell Hampton of conspiracy to commit wire fraud, wire fraud and aggravated identity theft in 2018. He moves the Court to vacate, set aside or correct his sentence under 28 U.S.C. § 2255. (ECF 484.)

The Court denies the motion and will not issue a certificate of appealability. Hampton's accusations, allegations and grievances are clearly frivolous on the basis of the existing record. Hampton was represented by competent counsel and received a fair trial; he was just buried by the Government's evidentiary avalanche.

I

Hampton, his father Kenneth Hampton, uncle Ellis Hampton and father's fiancée Roxanne Mason were indicted in 2015 for conspiring to fraudulently obtain apparent title to vacant properties in Philadelphia. (ECF 1.) Hampton and his co-conspirators profited from their actions by occupying, selling, mortgaging and obtaining grants for those properties. He was charged with one count of wire fraud conspiracy in violation of 18 U.S.C. § 371; 17 counts of wire fraud and attempted wire fraud in violation of 18 U.S.C. §§ 1343, 1349; and two counts of aggravated identity theft in violation of 18 U.S.C. § 1028A. (*See* Second Superseding Indictment (ECF 262-1).)

Ellis Hampton died before trial and, in May 2017, Mason pled guilty to certain counts. After Hampton was injured in an automobile accident while violating his pretrial release conditions by travelling outside the District without permission, the Court granted the Government's motion to sever his trial from his father's.  (ECF 270.) Kenneth Hampton was found guilty on all counts in June 2017.

Hampton went to trial in January 2018 (ECF 353) and the jury returned guilty verdicts on Counts 1 through 16 and 19 through 20.  (ECF 361.)  He was acquitted on Counts 17 and 18.  (*Id.*)  The Court denied his post-trial motions seeking an acquittal or new trial (ECF 375, 381, 382) finding the evidence of his guilt was "more than sufficient to sustain his conviction and there is no danger, serious or otherwise, that the jury's well-supported verdict amounted to a miscarriage of justice."  (ECF 381 at 2.)  *United States v. Hampton*, No. CR 15-302-2, 2018 WL 2219335, at *1 (E.D. Pa. May 15, 2018).

The Court sentenced Hampton to 119 months' imprisonment, $174,043.57 restitution and a $1,800 special assessment.  (ECF 391.)  He timely appealed the Court's application of the vulnerable victims enhancement to his offense level computation.  In June 2019, the Third Circuit denied his appeal and affirmed Hampton's conviction and sentence.  *United States v. Hampton*, 778 F. App'x 1-3 (3d Cir. 2019).

Hampton filed his 28 U.S.C. § 2255 motion raising seven grounds for post-conviction relief in May 2021 (ECF 484) and, with leave of Court, amended and supplemented his argument.  (ECF 486, 488, 489).  The Government opposes Hampton's motion.  (ECF 492.)

II

28 U.S.C. § 2255(a) allows a prisoner serving a federal sentence to move to "vacate, set aside, or correct the sentence" where: (1) it was imposed in violation of the Constitution or laws of the United States; (2) the Court was without jurisdiction to impose it; (3) it was in excess of the maximum authorized by law; or (4) it is otherwise subject to collateral attack. Hampton bears the burden of demonstrating his motion has merit. *See United States v. Davies*, 394 F.3d 182, 189 (3d Cir. 2005). Further, he "must clear a significantly higher hurdle than would exist on direct appeal" to obtain relief. *See United States v. Cleary*, 46 F.3d 307, 310 (3d Cir. 1995) (quoting *United States v. Frady*, 456 U.S. 152, 166 (1982)). When considering a Section 2255 motion, a court must "accept the truth of the movant's factual allegations unless they are clearly frivolous on the basis of the existing record." *Gov't of Virgin Islands v. Forte*, 865 F.2d 59, 62 (3d Cir. 1989).

A district court may dismiss a Section 2255 motion without a hearing where the "motion, files, and records, 'show conclusively that the movant is not entitled to relief.'" *United States v. Nahodil*, 36 F.3d 323, 326 (3d Cir. 1994) (quoting *United States v. Day*, 969 F.2d 39, 41-42 (3d Cir. 1992)). That is the case here.

A

Only one of Hampton's seven grounds for relief is explicitly phrased as a claim of ineffective assistance of counsel. The others appear to raise independent claims of error. (ECF 484.) However, Hampton acknowledges he did not raise any of these six claims on appeal and only one was presented to this Court. As direct claims, they would be procedurally defaulted. *See Massaro v. United States*, 538

U.S. 500, 504 (2003).  The Court assumes Hampton did not intend to raise procedurally defaulted claims.  *See Estelle v. Gamble*, 429 U.S. 97. 106 (1976) (holding *pro se* pleadings are held to less stringent standards than pleadings drafted by lawyers).  Because Hampton alleges he did not previously raise the claims due to his attorney's "fail[ure] to do so," the Court addresses each ground as if it underlies an ineffective assistance of counsel claim.

B

The Sixth Amendment guarantees an accused the "right . . . to have the Assistance of Counsel for his defen[s]e."  U.S. Const. amend. VI.  Counsel can deprive a defendant of that right by failing to render effective legal assistance.  *See Strickland v. Washington*, 466 U.S. 668, 686 (1984).  To obtain relief, Hampton must show (1) "counsel's performance was deficient, in that it fell below an objective standard of reasonableness" and (2) he "suffered prejudice" because of the deficiency.  *Blystone v. Horn*, 664 F.3d 397, 418 (3d Cir. 2011) (citing *Strickland*, 466 U.S. at 687).  "[B]oth the performance and prejudice components of the ineffectiveness inquiry are mixed questions of law and fact."  *Strickland*, 466 U.S. at 698.

There is a "strong presumption" counsel's performance was not deficient.  *Id.* at 689.  "The proper measure of attorney performance remains simply reasonableness under prevailing professional norms."  *Id.* at 688.  Whether counsel's representation was reasonable must be determined based on the particular facts of Hampton's case viewed as of the time of the challenged conduct.  *Id.* at 689.  "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable."  *Id.* at 690.  Defense counsel is not required "to pursue every claim or

4

defense, regardless of its merit, viability, or realistic chance for success." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009). Moreover, counsel cannot be ineffective for failing to pursue a meritless claim. *See United States v. Bui*, 795 F.3d 363, 366-67 (3d Cir. 2015).

To establish prejudice, Hampton must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 688. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. "The likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 112 (2011). Hampton must show "counsel's errors were so serious as to deprive [him] of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. The Court must consider the totality of the evidence. *Id.* at 695.

An ineffective assistance claim cannot proceed if Hampton fails to demonstrate either prong. *See Strickland*, 466 U.S. at 697. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." *Id.*

III

Hampton maintains his counsel was ineffective for failing to argue that the evidence did not support his conspiracy conviction. (ECF 484 at ECF p. 4; ECF 488 at ECF p. 7-8.) A defendant may be found guilty under 18 U.S.C. § 371, the general conspiracy statute, either for "conspiring to commit an offense against the United States" or for "conspiring to defraud the United States." *United States v. Rigas*, 605 F.3d 194, 208 (3d Cir. 2010). In Count One of the Second Superseding Indictment,

5

Hampton was charged with conspiring to commit wire fraud against the United States. (ECF 262-1) (alleging Hampton "conspired and agreed together with E.H. and with others . . . , to commit an offense against the United States . . . by means of false and fraudulent pretenses, representations and promises, and to use wire communications in interstate commerce to further the scheme to defraud, in violation of Title 18, United States Code, Section 1343").  Hampton argues he is entitled to relief because the evidence showed "the object of the Conspiracy was the City of Philadelphia and various private property owners of the City of Philadelphia" and "not the United States."  (ECF 488 at ECF p. 7.)  He also argues the only counts relevant to his conspiracy conviction were those on which he was acquitted:  Counts 17 and 18, which alleged the Federal Emergency Management Agency was a victim of wire fraud.  (ECF 484 at ECF p. 4.)

Hampton's acquittal on the two wire fraud counts premised on the submission of fraudulent claims to FEMA does not undermine his conspiracy conviction.  First of all, a defendant can be guilty of conspiring to commit a substantive crime that he did not ultimately commit.  *See United States v. Salahuddin*, 765 F.3d 329, 342 (3d Cir. 2014) ("[T]he actual completion of the agreed-upon venture is immaterial."); *United States v. Watkins*, 339 F.3d 167, 178 (3d Cir. 2003) ("A conspiracy charge does not require proof of success in committing the offense (as does a substantive offense), only an agreement to commit it.").  Further, the evidence at trial was sufficient to show Hampton agreed with his father and Mason to commit the federal criminal offense of wire fraud in violation of 18 U.S.C. § 1343.  *See United States v. Hampton*, No. CR 15-302-2, 2018 WL 2219335, at *5 (E.D. Pa. May 15, 2018) ("A fair interpretation of the Government's evidence – not merely one in favor of the Government – shows that Terrell was a

willing participant in the criminal enterprise and that the jury, under any standard, got it right."). This is enough to support his conspiracy conviction and his counsel was not ineffective for failing to argue to the contrary.

IV

Hampton contends his counsel was ineffective for not arguing the evidence was insufficient to establish the use of a wire in connection with the fraudulent title scheme. 18 U.S.C. § 1343 criminalizes the transmission of wire communications by someone who has devised or intends to devise "any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses." 18 U.S.C. § 1343. To prove wire fraud, the Government must establish beyond a reasonable doubt that (1) the defendant knowingly and willfully participated in a scheme or artifice to defraud, (2) with the specific intent to defraud, and (3) that interstate wire communications were used in furtherance of the scheme. *United States v. Antico*, 275 F.3d 245, 261 (3d Cir. 2001), abrogated on other grounds by *United States v. Riley*, 621 F.3d 312 (3d Cir. 2010). Hampton concedes there was "contact by use of wire" between the scheme's members but contends "[t]here were no fraudulent materials acquired or transferred" via wire. (ECF 488 at ECF p. 9.) He argues "[t]here was no fraud committed" using a wire and no information passed through a wire "was needed to execute the scheme." (ECF 484 at ECF p. 5-6.)

The evidence at trial showed, beyond any doubt, that Hampton personally participated in dozens of calls with his father, exchanged multiple emails with him and, via Mason, received many messages his father had conveyed to her by telephone. As the Court previously explained,

7

> [t]he jurors saw and heard voluminous evidence of Kenneth
> providing repeated and specific instructions to Terrell by phone,
> mail and email.  The record was replete with direct communications
> between Terrell and Kenneth, (Gov't Exs. 1004, 1021, 1029, 1044,
> 1046, 1049, 1068, 1074, 1075, 1077, 1078, 1080, 1082, 1083, 1085,
> 1089) and of messages they passed to each other through Mason
> (Gov't Exs. 1003, 1017, 1022, 1042, 1053, 1054, 1058).

*United States v. Hampton*, No. CR 15-302-2, 2018 WL 2219335, at *3 (E.D. Pa. May 15, 2018).

For these communications to have been in furtherance of the fraud, the use of wires need not have been an "essential part of the scheme," rather, it need only have been "incident to an essential part of the scheme, or a step in the plot." *U.S. v. Keller*, 395 F. App'x 912, 915 (3d Cir. 2010) (quoting *Schmuck v. United States*, 489 U.S. 705, 710-11 (1989) (internal quotations, citations and alterations omitted).  There was ample evidence that the communications Hampton, Mason and Ellis received from Hampton's father were instrumental to the operation of their fraudulent scheme.  "[R]ecordings between Mason and Kenneth recount Terrell's participation in the production and filing of forged title documents (Gov't Exs. 1016, 1017)."  *Hampton*, 2018 WL 2219335, at *3.  And "the evidence showed that Terrell embraced his role and exercised authority within the conspiracy.  He considered himself responsible for preparing the fraudulent documents (Gov't Ex. 1043)."  *Id*.  Hampton's counsel had no argument to make otherwise.[1]

---

[1]    Hampton also believes the wire fraud charges were multiplicitous.  (See ECF 488 at ECF p. 9) (questioning how he could have been charged with twelve counts of wire fraud where he "was only on three (3) of [fifteen] recordings").  "A multiplicitous indictment risks subjecting a defendant to multiple sentences for the same offense, an obvious violation of the Double Jeopardy Clause's protection against cumulative punishment."  *United States v. Kennedy*, 682 F.3d 244, 255 (3d Cir. 2012).  The test for multiplicity considers "whether the legislature intended to make separately punishable the different types of conduct referred to in the various counts."  *United States v. Stanfa*, 685 F.2d 85, 87 (3d Cir.1982) (citation and internal quotation omitted).  Because the wire fraud statute's text "suggests each individual transmission in furtherance of a scheme is a separate unit of

V

Hampton challenges his counsel's alleged failure to argue there was insufficient evidence to prove identity theft.  He was convicted of two counts of aggravated identity theft in violation of 18 U.S.C. § 1028A which outlaws the transfer, possession or use, without lawful authority of "a means of identification of another person," during and in relation to another specified federal felony.  18 U.S.C. § 1028A.  In Hampton's view, the "Government presented no evidence to show" he knew false deeds he prepared "were a means of identification," there was "no evidence" he signed or forged a deed and "notarization of deeds made transfer lawful."  (ECF 484 at ECF p. 7.)  He contends there was no evidence about who had the deeds notarized or who signed the false deeds and "[j]ust because owners may have been dead during the time of transfer doesn't mean property was obtained through fraudulent means."  (ECF 488 at ECF p. 11.)

Hampton's identity theft convictions arise out of documents that purported to transfer ownership of a house at 5357 Delancey Street from two individuals to Mason, identified as their "granddaughter."  Mason, however, was not their granddaughter and the individuals predeceased the alleged property transfer.  Mason filed a sham March 8, 2010 "deed" for 5357 Delancey Street with the Philadelphia Department of Records on July 8, 2010 and filed a Real Estate Tax Certification for the property claiming a tax exemption based on her false familial relationship with the deceased property owners.  As the Court previously explained, "[a]lthough the title was in Mason's name, the evidence showed that Terrell was involved in the acquisition and disposition of the

---

prosecution." an indictment may properly charge as a separate count each interstate wiring in furtherance of the scheme.  *United States v. [Kenneth] Hampton*, No. 15-302, 2021 WL 1088289, at *7 (E.D. Pa. Mar. 22, 2021); *see* 18 U.S.C. § 1343.

Delancey Street House.  Recordings between Mason and Kenneth reveal that Terrell prepared the phony deed and fraudulent tax transfer certificate for Delancey Street. (Gov't Exs. 1016, 1017.)"  *Hampton*, 2018 WL 2219335, at *4.

Hampton's aggravated identity theft convictions required the Government to prove (1) he knowingly transferred, possessed or used another person's "means of identification", and (2) he knew it included a real person's identifying information.  *See United States v. Roberts*, 597 F. App'x 72, 75 (3d Cir. 2015); *see also* 18 U.S.C. § 1028A. A name is a "means of identification" under 18 U.S.C. § 1028(d)(7)(A).  *Id.* ("[T]he term 'means of identification' means any name or number that may be used, alone or in conjunction with any other information, to identify a specific individual, including any . . . name . . . .").  Hampton's counsel could not reasonably contend there was no evidence of the use of a false "means of identification."  The "means of identification" Hampton was convicted of misusing were the real names of the individuals who held 5357 Delancey Street's title.  Hampton's identity theft conviction did not require proof he knew that the thing he used – i.e., names – constituted a "means of identification." *See Roberts*, 597 F. App'x at 75 (holding it was enough to show the defendant "knew that the means of identification belonged to another person and was not fictitious").

Further, Hampton's counsel was not ineffective for failing to argue that notarization of the falsified deeds "made the transfer lawful" when there is no legal support for an argument that notarization can turn a fabricated deed into a valid one. (ECF 484 at ECF p. 7; *see also* ECF 488 at ECF p. 11-13 ("Once the property is notarized the person who it is notarized to has lawful authority to do what they will with the property.")  *See* 57 Pa. C.S. § 302 (listing notarial acts that may be performed

by a notary public).

Nor could Hampton's counsel have argued he and his co-defendants "never assumed to be anyone but [them]selves." (ECF 484 at 11.) For a conviction under 18 U.S.C. § 1028A, the Government only needed to prove Hampton transferred, possessed, or used another person's "means of identification" without lawful authority during and in relation to a qualifying felony. It did. Proof of false impersonation was not required.[2]

## VI

Hampton believes his counsel was ineffective because she did not move to dismiss the charges against him based on pre- and post-indictment delay. (ECF 484 at ECF p. 8; ECF 488 at ECF p. 19-21.) Counsel had no reasonable basis to do so.

## A

The statute of limitations is the "primary guarantee against bringing overly late criminal charges," although a sufficiently severe pre-indictment delay can rise to the level of a violation of the Fifth Amendment's Due Process Clause. *United States v. Marion*, 404 U.S. 307, 322-24 (1971). The Speedy Trial Clause and the Speedy Trial Act do not apply to pre-indictment delays. *See Betterman v. Montana*, 578 U.S. 437,

---

[2]    Hampton's assertion that 18 U.S.C. § 1028A is unconstitutionally vague (ECF 484 at 7) is meritless. "A statute violates due process of law if it 'either forbids or requires the doing of an act in terms so vague that men of ordinary intelligence must necessarily guess as to its meaning and differ as to its application." *United States v. Woods*, 915 F.2d 854, 862 (3d Cir. 1990) (quoting *Connally v. General Constr. Co.*, 269 U.S. 385, 391 (1926)). A vagueness challenge that does not implicate the First Amendment "'must be examined in the light of the facts of the case at hand.'" *Id.* (quoting *United States v. Powell*, 4323 U.S. 87, 92 (1975)). Hampton does not suggest which part of the aggravated identity theft statute would leave ordinary persons guessing at its meaning and, because his conduct (falsifying real estate documents) does not fall under the First Amendment, he would have to show the statute's application to his particular facts was "vague as to [his] conduct." *Id.* He has not done this where the statute includes "names" as protected "means of identification" and he used the 5357 Delancey Street's owners' names to carry out the fraudulent title scheme.

441-45 (2016).  A defendant claiming an unconstitutional pre-indictment delay bears the burden to prove:  (1) "the government intentionally delayed bringing the indictment in order to gain some advantage over him," and (2) "this intentional delay caused the defendant actual prejudice."  *United States v. Ismaili*, 828 F.2d 153, 167 (3d Cir. 1987); *United States v. Sebetich*, 776 F.2d 412, 430 (3d Cir. 1985) ("Appellants must show intentional delay *and* actual prejudice.").  Hampton has not established either.

Even though Hampton maintains the Government could have charged him in 2011, he was ultimately convicted of a conspiracy that ran "[f]rom in or around May 9, 2007, to in or around October 28, 2014."  (Second Superseding Indictment (ECF 262-1), Count 1, ¶ 59.)  The original indictment was returned roughly nine months after the end of the charged criminal activity.  The Government has no obligation to bring charges "as soon as probable cause exists but before [it is] satisfied [it] will be able to establish the suspect's guilt beyond a reasonable doubt."  *United States v. Lovasco*, 431 U.S. 783, 791 (1977).  Such a rule "would cause numerous problems" in cases where "a criminal transaction involves more than one person or more than one illegal act."  *Id.* at 793.  Moreover, even if the Government's investigation could have been completed in less time, administrative delay does not satisfy the "tactical delay" prong of a Due process claim – even where it amounts to negligence.  *See United States v. Ismaili*, 828 F.2d 153, 168 (3d Cir. 1987) (finding no "intentional" delay even where the investigation's timetable was "not an attractive one").

Hampton claims the delay prevented him from calling to testify at trial the persons "responsible for selling/transferring properties to him."  (ECF 488 at ECF p. 20.)  However, he has not shown the Government intended to make these witnesses

unavailable to gain a tactical advantage.  And it would have been difficult for the Government to do anything further to prevent those people from testifying – they died decades before they "transferred" their houses to Hampton.  (*See* Second Superseding Indictment (ECF 262-1), Count 1, ¶¶ 11, 17, 33; *see also* Gov't Exs. 707, 708.)

Hampton's argument that the delay prevented him from obtaining the testimony of the "notary where deeds were notarized" also fails to support a Section 2255 claim. (ECF 488 at ECF p. 20.)  He has not shown the Government deliberately delayed the indictment to bar the testimony of someone he doesn't identify.  Nor does he explain how this person or persons was or were unavailable as the result of any delay, what they would have said or how their testimony would have helped him.

Hampton also argues the Government waited to charge him in this case until after he had completed an earlier sentence as a felon-in-possession, ostensibly to prevent him from serving his sentences concurrently.  (ECF 484 at ECF p. 8,10-11.) But Hampton suffered no tactical disadvantage or prejudice from the timing of the charges against him.  If the Court believed it appropriate to do so, it could have taken his prior sentence into account and given Hampton a lighter sentence here.  If it felt the criminal history points attributable to Hampton's felon-in-possession conviction overstated his criminal history, it could have considered that fact in the context of a possible downward adjustment.

Absent a showing of intentional delay or prejudice, Hampton's counsel was not ineffective for failing to move to dismiss the indictment based on any pre-indictment delay.

B

Hampton also argues his counsel should have moved to dismiss the charges because of the delay between when he was first charged – July 7, 2015 – and the start of his trial on January 9, 2018.  (ECF 484 at ECF p. 8, ECF 488 at ECF p. 18-21.)

Hampton was initially arraigned on August 4, 2015, and his case remained joined with his father's for Speedy Trial Act purposes until Hampton's injuries from the car accident necessitated severing his case from his father's in June 2017.  Virtually all the time from the severance until Hampton's trial was excluded for Speedy Trial Act purposes (*see* ECF 272, 328, 329) and any argument premised on the Speedy Trial Act would have been frivolous.

To the extent that Hampton presents an ineffectiveness claim based on the failure to raise a constitutional Speedy Trial claim, it also falls short.  As the Court explained when addressing his father's identical claim:  "[a]lthough about two years passed between the Indictment and [Kenneth] Hampton's trial, he and his co-conspirators largely caused the delay by requesting several continuances and the complexity of the case supported a two-year run-up to trial."  *United States v. [Kenneth] Hampton*, No. CR 15-302, 2021 WL 1088289, at *6 (E.D. Pa. Mar. 22, 2021) (citing *United States v. Davies*, 394 F.3d 182, 189 (3d Cir. 2005)), certificate of appealability denied, No. 21-1772, 2021 WL 8154937 (3d Cir. Aug. 30, 2021).  Any additional delay between his father's trial and his own is attributable to Hampton, who was injured when he violated the terms of his pretrial release by traveling outside of this District.  (ECF 269.)  Hampton's case was severed from Kenneth's while he was on narcotic painkillers because of the "risk of an indefinite delay," not because of prosecutorial

14

tactics.  (*Id.* at 5.)  Hampton then moved for more time to permit his counsel to prepare (ECF 328) and waived his right to a speedy trial.  (ECF 329.)  After inclement weather postponed the January 4, 2018 scheduled start of his trial (ECF 351), it began on January 9.  (ECF 352, 353.)  Hampton presents no other reasons for any post-indictment delay and has not identified any actual prejudice he suffered from the delay.

VII

Hampton also contends counsel was ineffective for failing to raise several challenges to his sentence.  (ECF 484 at ECF p. 10; ECF 488 at ECF p. 14-17.)  In fact, counsel did make many of these arguments, which were rejected by this Court or the Court of Appeals.

A

Hampton argues his counsel should have asserted a double jeopardy challenge to the Court's decision to "stack" the sentences for his aggravated identity theft convictions.  (ECF 484 at ECF p. 10; ECF 488 at ECF p. 16.)  He was convicted of separate counts of aggravated identity theft – Counts 19 and 20 – based on his unlawful use of the names of both owners of 5357 Delancey Street.  Congress provided that punishments for multiple counts of violations of the aggravated identity theft statute "may, in the discretion of the court, run concurrently, in whole or in part, only with another term of imprisonment that is imposed by the court at the same time on that person for an additional violation of this section . . . ." 18 U.S.C. § 1028A(b)(4).  And double jeopardy "is not implicated when multiple separate violations of the same provision are charged in multiple counts."  *United States v. Finley*, 726 F.3d 484, 495 (3d Cir. 2013) (citation and internal quotation omitted).  Hampton's counsel had no

15

legal basis to challenge the Court's decision to sentence him to consecutive terms on the aggravated identity theft counts.  (*See* ECF 391.)

B

Hampton also claims his attorney was ineffective for not arguing his prior felon-in-possession conviction was "relevant conduct" for purposes of his sentence in this case.  (ECF 484 at ECF p. 10; ECF 488 at ECF p. 14-16.)  He essentially claims he should not have been prosecuted and sentenced for the gun and conspiracy and wire fraud offenses separately because the handgun he was convicted of possessing in 2012, *see Hampton v. United States*, Crim. A. No. 11-325 (E.D. Pa.), "was part of the same course of conduct or offense" committed in this case since it was found when the Government executed a search warrant related to the conduct charged in this case. (ECF 488 at ECF p. 14-15.)  At minimum he seems to think he should have received credit on his sentence in this case for the time he served on the felon-in-possession conviction.

In fact, Hampton's counsel argued this point at his sentencing; she did not "fail to raise" it.  (ECF 405 (May 31, 2018 Sentencing Hr'g Tr.) at 49-53.)  Even if she hadn't, Hampton cannot establish the offenses in both cases were "part of the same course of conduct, and thus relevant conduct." *United States v. Kulick*, 629 F.3d 165, 171 (3d Cir. 2010).  To find relevant conduct, a sentencing court considers:  "(1) the temporal proximity between the two offenses; (2) the similarity of the offenses; and (3) the regularity of the offenses." *Id.*  There must be "a strong showing of similarity, even where the temporal proximity was strong." *Id.* at 172.  Hampton has not shown there is any similarity between the offenses as there is no evidence the gun was in any way

16

involved in or related to the scheme to obtain, maintain or dispose of the houses which

was the subject of his conspiracy, aggravated identity theft and wire fraud convictions.[3]

C

Hampton also argues the enhancements the Court applied at sentencing should

have been presented to and decided by a jury.  (ECF 484 at ECF p.10; ECF 488 at ECF

p. 17.)  Hampton purportedly raises a claim under *Apprendi v. New Jersey*, which held

that "any fact that increases the penalty for a crime beyond the prescribed statutory

maximum" except for the fact of a defendant's prior conviction "must be submitted to a

jury, and proved beyond a reasonable doubt."  530 U.S. 466, 490 (2000).  Facts relevant

to enhancements under the advisory Guidelines regime, however, need not be proven

beyond a reasonable doubt.  *United States v. Grier*, 475 F.3d 556, 565 (3d Cir. 2007) (en

banc).

D

Hampton also broadly contends there was insufficient evidence to support any of

the enhancements applied at sentencing.  (ECF 484 at ECF p. 10.)  He provides no

explanation, argument or legal authority for his conclusory assertion.  Hampton cannot

use Section 2255 to collaterally attack the Guidelines enhancements the Court

considered, addressed and applied at sentencing:  loss amount (ECF 390; ECF 405 (May

31, 2018 Sentencing Hr'g Tr. at 39-40, 54) and vulnerable victims.  (*Id.* at 40-49, 55,

affirmed *Hampton*, 778 F. App'x 103, 105-107 (3d Cir. 2019).)  And again, Hampton

---

[3]       His related argument that he was entitled to a credit for the time served on his prior
sentence under USSG Section 5G1.3(b) misses the mark because it applies to "undischarged" terms
of imprisonment and Hampton had fully served his felon-in-possession sentence when he was
sentenced in this case. (Hampton actually cites USSG Section 5G1.3(c), but that section applies to
anticipated terms of imprisonment to be imposed by a state court.)  (*See* ECF 484 at ECF p. 14.)

cannot argue his counsel was ineffective for failing to make arguments that were already made.

## VIII

Hampton also accuses his lawyer of telling the jury he was guilty, being confused and inadequately prepared and having little knowledge or expertise. (ECF 484 at ECF p. 11-12; ECF 488 at ECF p. 24-25.) He also argues she failed to make certain arguments and file motions in this Court and the Third Circuit. (*Id.*) These allegations are conclusory and meritless. Hampton has the burden to establish that counsel's conduct was so deficient that she was not functioning as the counsel the Sixth Amendment guarantees. He cannot meet this burden when, as here, he provides no support in the record for any of these assertions. *Strickland*, 466 U.S. at 687. What the record does show is that Hampton was represented by a competent and experienced criminal defense attorney who did all she could with what she had which, given the Government's evidence, was quite the tall order.

## IX

Finally, Hampton claims his conviction was the result of prosecutorial misconduct, citing statements made in his felon-in-possession trial, the delay in this trial, and prosecutors' alleged various interactions with his fiancée and other family members. (ECF 488 at ECF p. 21-24.) To obtain relief based on prosecutorial misconduct, he must show the conduct he claims "so infect[ed] the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974).

First of all, whatever did or didn't happen in his 2011 felon-in-possession case

has nothing to do with this case.  Second, the Court never saw anything in the Government's myriad filings or its conduct at trial which was in any way even remotely improper.  Quite the contrary actually.  And however Hampton characterizes any of the Government's alleged interactions with his alleged friends or family members has no apparent relevance to his trial.  Hampton offers nothing but speculation that anything the prosecutors may have done had a material impact on the jury's verdict which was overwhelmingly supported by the evidence.  Hampton's counsel had no basis to object to any aspects of the prosecutors' conduct.

X

When a district court denies a § 2255 motion, a petitioner may only appeal if the district court grants a certificate of appealability.  28 U.S.C. § 2253.  Because Hampton has not made a substantial showing of the denial of a constitutional right and reasonable jurists would not debate the dispositions of his claims, no certificate of appealability shall issue.  *See* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

An appropriate Order follows.

BY THE COURT:

***/s/ Gerald J. Pappert***
GERALD J. PAPPERT, J.